NUMBER 13-03-566-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
___________________________________________________________________

IN THE INTEREST OF C. U., A MINOR CHILD
___________________________________________________________________

On appeal from the 267th District Court
of De Witt County, Texas.
__________________________________________________________________

MEMORANDUM OPINION

Before Justices Yañez, Rodriguez, and Garza
Memorandum Opinion by Justice Rodriguez

         Appellant, the biological father of C.U., a minor child, brings this appeal, pro se,
from an order establishing a parent-child relationship. By two issues, appellant
contends the court erred in denying his request for a bench warrant and the evidence
is insufficient to support the court's determination regarding conservatorship and
possession of or access to the minor child. Because all issues of law presented by this
case are settled, our memorandum opinion only advises the parties of the Court's
decision and the basic reasons for it. See Tex. R. App. P. 47.4. We affirm.
I. Background
         Appellant filed suit to determine the parentage of C.U. The Attorney General
intervened to establish paternity of C.U. and set child support. In its final judgment,
the court found appellant to be C.U.'s father and ordered him to pay child support. It
appointed C.U.'s mother managing conservator and appellant possessory conservator
of the child. The court also ordered that appellant would have no possession of and
access to the child except insofar as appellee, the child's mother, agreed in advance.



II. Bench Warrant
         By his first issue, appellant contends the trial court erred in failing to grant a
bench warrant so that he could attend the hearing. Although a litigant may not be
denied access to the courts simply because the litigant is incarcerated, prisoners have
no absolute right to appear personally at civil proceedings. In the Interest of Z.L.T.,
J.K.H.T. and Z.N.T., 124 S.W.3d 163, 165 (Tex. Crim. App. 2003); Pedraza v.
Crossroads Security Sys., 960 S.W.2d 339, 342 (Tex. App.–Corpus Christi 1997, no
pet.) (citing Nance v. Nance, 904 S.W.2d 890, 893 (Tex. App.–Corpus Christi 1995,
no writ)). In balancing the interest of the State in preserving the integrity of the
correctional system with the inmate's interest in access to the courts, the court may
consider the following: (1) the cost and convenience of transporting the prisoner to
the courtroom; (2) the security risk presented by the prisoner; (3) whether the
prisoner's claims are substantial; (4) the need for witnessing the prisoner's demeanor;
(5) whether the trial is before the jury or the court; (6) whether the prisoner can and
will offer admissible, non-cumulative testimony that cannot be effectively presented
by deposition, telephone, or some other means; (7) the prisoner's probability of
success on the merits; and (8) the possibility of delaying trial until the inmate is
released. Id. at 165-66. Additional factors include whether an inmate is represented
by counsel and whether an inmate is a civil defendant rather than a plaintiff. In re I.V.,
61 S.W.3d 789, 796 (Tex. App.–Corpus Christi 2001, no pet.). This Court reviews
the trial court's determination under an abuse-of-discretion standard. See In the
Interest of Z.L.T., 124 S.W.3d at 166.
         In general, "our rules place the burden on litigants to identify with sufficient
specificity the grounds for a ruling they seek." Id. (citing Tex. R. Civ. P. 21; Tex. R.
App. P. 33.1(a)(1)(A)). "A litigant’s status as an inmate does not alter that burden." 
Id. "[S]ince a prisoner has no absolute right to be present in a civil action, it follows
that the prisoner requesting a bench [w]arrant must justify the need for his presence." 
Id. (citing Pedraza, 960 S.W.2d at 342). The court has no duty to go beyond the
bench warrant request and independently inquire into the necessity of an inmate’s
appearance, regardless of the content of the request. See id.
         After being informed that his case was to be dismissed, appellant filed a motion
to retain the case for trial wherein he requested to appear personally, and in the
alternative, to proceed by affidavits, depositions, telephone or other effective means. 
Appellant proposed the following reason for this request: "because [appellant] has had
and witinessed [sic] this procedure invoked by the prison system and is now standard
procedure . . . ." Appellant also filed two motions requesting a bench warrant or, in
the alternative, for a hearing by conference call or the presentation of affidavit
testimony.  The motions, however, did not include information by which the court
could assess the necessity of appellant's appearance. Although appellant asked the
court to take into consideration various cases and guidelines, he failed to provide any
factual information showing why his interest in appearing outweighed the impact on
the correctional system.



         Appellant bore the burden to establish his right to relief. See id. Appellant did
not meet this burden. Therefore, the court did not abuse its discretion by overruling
his request for a bench warrant. See id. We overrule appellant's first issue.
III. Parent/Child Relationship
         We construe appellant's second issue as a challenge to the legal and factual
sufficiency of the evidence to support the court's determination regarding
conservatorship and possession of and access to his minor child.
A. Standard of Review
         "The best interest of the child shall always be the primary consideration of the
court in determining the issues of conservatorship and possession of and access to the
child." Tex. Fam. Code Ann. § 153.002 (Vernon 2002); see Hopkins v. Hopkins, 853
S.W.2d 134, 136 (Tex. App.–Corpus Christi 1993, no writ). The reviewing court
gives wide latitude to a trial judge's decision regarding what serves the best interest
of the child, specifically, the establishment of the terms and conditions of
conservatorship, and will reverse the lower court's order only if it appears from the
record as a whole that the trial court abused its discretion. Gillespie v. Gillespie, 644
S.W.2d 449, 451 (Tex. 1982); Niskar v. Niskar, 136 S.W.3d 749, 753 (Tex.
App.–Dallas 2004, no pet.) (citing In re Doe 2, 19 S.W.3d 278, 281 (Tex. 2000));
Ngo v. Ngo, 133 S.W.3d 688, 690-91 (Tex. App.–Corpus Christi 2003, no pet.);
Hopkins, 853 S.W.2d at 136.
         A trial court abuses its discretion when it acts arbitrarily or unreasonably,
without reference to any guiding rules or principles. E.I. du Pont de Nemours & Co.
v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995) (citing Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)); Worford v. Stamper, 801
S.W.2d 108, 109 (Tex. 1990); Hopkins, 853 S.W.2d at 136. Under an abuse of
discretion standard, the legal and factual sufficiency of the evidence are not
independent grounds for asserting error, but are relevant factors in determining
whether the trial court abused its discretion. Niskar, 136 S.W.3d at 753; see Handley
v. Handley, 122 S.W.3d 904, 907 (Tex. App.–Corpus Christi 2003, no pet.)
(sufficiency of evidence was relevant factor in division of property in divorce action). 
In the absence of a clear abuse of discretion, we should not substitute our judgment
for that of the trial court. In the Interest of Ferguson, 927 S.W.2d 766, 769 (Tex.
App.–Texarkana 1996, no writ).
         Moreover, "[w]hen a party does not request findings of fact, we infer that a trial
court made all the necessary findings to support its judgment." Niskar, 136 S.W.3d
at 753 (citing Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex.1989)). The record
is reviewed to determine whether some evidence supports the judgment and the
implied findings of fact. Worford, 801 S.W.2d at 109. When making that
determination, we consider only the evidence most favorable to the trial court's
judgment and disregard entirely that which is opposed or contradictory to it. Id. "The
judgment must be affirmed if it can be upheld on any legal theory that finds support
in the evidence." Id.; see Niskar, 136 S.W.3d at 754.
B. Analysis
         "Since the best interest of the child controls questions of conservatorship, the
family code grants the trial court broad discretion in defining the rights, duties,
privileges, and responsibilities of a parent it appoints a possessory conservator." 
Hopkins, 853 S.W.2d at 137. The trial court "may grant, deny, restrict or limit the
possessory conservator's possession of or access to the child, and may grant, deny,
restrict or limit any rights, privileges, duties and responsibilities with respect to the
child as are necessary to protect the child's best interest." Id. "The trial court may,
for example, appoint the parent a possessory conservator and deny that parent any
access to or possession of the child, if it finds that such limitations are in the best
interest of the child." Id. at 137-38.
         Moreover, section 153.192(b) of the family code provides guidelines for the trial
court to follow when determining periods of possession for a possessory conservator. 
See Tex. Fam. Code Ann. § 153.192(b) (Vernon 2002). There is a rebuttable
presumption that the standard possession order: (1) provides reasonable minimum
possession of a child for a parent named as a possessory conservator or joint
managing conservator; and (2) is in the best interest of the child. Niskar, 136 S.W.3d
at 756 (citing Tex. Fam. Code Ann. § 153.252 (Vernon 2002)). The family code also
allows a trial court to deviate from the standard possession order. Id. "When
deviating from the standard possession order, a trial court may consider: (1) the age,
developmental status, circumstances, needs, and best interest of the child; (2) the
circumstances of the managing conservator and of the parent named possessory
conservator; and (3) any other relevant factor." Id. (citing Tex. Fam. Code Ann. §
153.256 (Vernon 2002)).
         In this case, the trial court's judgment appointed appellant possessory
conservator and ordered that appellant "shall have no possession or access to the child
unless mutually agreed to in advance" by appellant and the child's mother. The
evidence shows that appellant was in prison at the time of the hearing, and had been
in and out of prison for fifteen years for various violations including "[stealing a]
pickup, breaking and entering, [and] violations of parole." The trial court noted that
"somewhere in the papers . . . [appellant] mentioned . . . the possibility of being
released after thirty months." Although appellant asserted in his statement concerning
alternative dispute resolution that he was only aware of rumors that he had a child, the
child's mother testified that she told appellant he was the father of the child when she
was pregnant. At the time of the hearing, the child was fifteen years old. The child's
mother also testified that neither she nor the child had lived with appellant during the
last four years. Appellant was in prison during that time. The child had never visited
appellant; the child and appellant "never really had a relationship of any kind." The
child's mother further testified that the child wished to keep his last name which was
his mother's maiden name. She stated that the child did not want to change his name
to appellant's last name because he did not know appellant and he had gone by his
mother's maiden name for fifteen years. Testimony further established that appellant
had not supported his child financially for at least the last four years.
         In open court, the trial court explained that it limited appellant's conservatorship
on the basis that appellant had been incarcerated "basically this child's entire life and
that there's not been really a real relationship developed between them." The court
further limited appellant's visitation rights to "whatever either the two of you can
agree on, or if you [, the child's mother,] choose to take this child to visit [appellant]
while he's locked up you may do that." The court's statements indicate it took into
account the needs and best interest of the child, the circumstances of the
conservators, and other relevant factors. See Tex. Fam. Code Ann. § 153.256 (Vernon
2002).
         Considering only the evidence most favorable to the trial court's judgment and
disregarding entirely evidence, if any, that is opposed or contradictory to it, see
Worford, 801 S.W.2d at 109, we conclude that the trial court did not abuse its
discretion by appointing appellant possessory conservator of the child. Furthermore,
we conclude the trial court did not abuse its discretion when it restricted appellant's
access to and possession of the child to opportunities mutually agreed upon in advance
by appellant and the child's mother. Appellant's second issue is overruled.
         Nonetheless, we note that by restricting appellant's visitation with and
possession of the child, the trial court has not denied appellant his rights as a parent. 
Should circumstances change, a parent whose rights have been restricted may file a
motion to modify the trial court's order. See Niskar, 136 S.W.3d at 756. The Texas
Family Code provides for modification of an order as to conservatorship, support, or
possession of and access to a child if the modification would be in the best interest
of the child and the circumstances of the child or a conservator, among others, has
materially and substantially changed. Id. (citing Tex. Fam. Code Ann. § 156.001(1)
(Vernon 2002)).
IV. Conclusion
         Accordingly, we affirm the judgment of the trial court.                                                                                           
                                                                        NELDA V. RODRIGUEZ
                                                                        Justice

Memorandum Opinion delivered and 
filed this 30th day of August, 2004.